IMG-200                                                                NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1951
_____

XING CHEN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A99 673 054)
Immigration Judge:  Honorable Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 12, 2010

Before:  RENDELL, FISHER and GARTH, Circuit Judges.

(Filed: May 13, 2010)
_____

OPINION
_____

PER CURIAM

Xing Chen petitions for review of a Board of Immigration Appeals ("BIA") decision dismissing his appeal of an Immigration Judge's ("IJ") decision denying his applications for relief from removal. We will deny the petition for review.

Chen is a native and citizen of China from Fujian Province. He arrived in the United States in July 2006, when he was nineteen years old. Shortly thereafter, a notice to appear was issued charging that Chen was subject to removal because he was present in the United States without having been admitted or paroled. Through counsel, Chen conceded that he is removable as charged. He applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

Chen testified that he left China because the police detained and tortured him on April 16, 2006. Chen explained that on that date he attended a private gathering of Christians at the home of Sister Lu for the Easter holiday. He stated that there were more than twelve people there and that they read the bible and sang. The police knocked at the door and more than twelve officers came inside. The police stated that someone had reported that they were gathering there illegally for Christian activities. The police told everyone to stand aside, searched the home, and took away the bibles.

Chen stated that the police took everyone to the police station for interrogation. Three officers took Chen to a small room and asked him to write down his personal information and the name of the leader of the activities. Chen told the police that they did not do anything wrong and that they voluntarily took part in the activities. Chen testified

2

that an officer then punched him in the stomach and another officer hit his shoulder with a stick. The police kicked him and continued to ask him to identify the leader.

Chen testified that he was detained for two days and that, in order to be released, he signed a letter stating that he would not participate in the gatherings anymore or contact religious organizations. Chen was required to report to the police each month. The police called Chen's school and the school did not allow him to return.

On cross-examination, Chen testified that he had gathered with the same twelve people every Sunday from September 2005 until April 16, 2006, but he did not know their names because they referred to each other as brother and sister. Chen also stated that he was bruised after the police detained him but did not seek medical treatment.

The IJ did not find Chen's testimony persuasive. The IJ explained that Chen's demeanor suggested that he did not have firm convictions and that his answers were often short or non-responsive. The IJ also noted that Chen had submitted a form letter from a church in New York confirming his attendance, but that no one had written a personal letter on his behalf. Based on the vague and imprecise testimony, the IJ made an adverse credibility finding. The IJ also relied on contradictions between Chen's testimony and written statement, noting that he testified that he did not know the names of the people at the religious gatherings but he wrote that he had been introduced to everyone. The IJ also noted a minor inconsistency, in that Chen testified that there were more than a dozen

3

people at Sister Lu's house on April 16, 2006, but he wrote in his statement that there were "10 something people."

The IJ further stated that Chen's credibility was undermined by the 2007 U.S. Department of State Profile of Asylum Claims and Country Conditions, which provides that local authorities quietly tolerated house churches and prayer meetings as long as they remained small and unobtrusive. The IJ noted that the situation described by Chen did not appear to be one that authorities would have responded to in the way that he testified. As a result of the adverse credibility finding, the IJ concluded that Chen had not met his burden of proof on any of his applications for relief from removal.

The BIA found no clear error in the IJ's adverse credibility finding and dismissed Chen's appeal. Like the IJ, the BIA noted that Chen testified that he did not know the names of the other people attending the weekly meetings at Sister Lu's home, but his written statement provided that he was introduced to everyone there. The BIA further noted that when Chen was asked why he was not fined when some of the other church attendees were fined, Chen seemed unaware that he had written in his statement that other attendees were fined. This petition for review followed.

We review the agency's factual findings, including adverse credibility findings, for substantial evidence. Chen v. Att'y Gen., 434 F.3d 212, 216 (3d Cir. 2005). Under this standard of review, we will uphold the agency's findings unless a reasonable adjudicator would be compelled to conclude to the contrary. Id. Chen's applications for relief are

4

governed by the Real ID Act, under which a credibility determination may be based on an alien's demeanor and responsiveness, the plausibility of the alien's account, and inconsistencies in the evidence, regardless of whether the inconsistencies go to the heart of the alien's claim. 8 U.S.C. § 1158(b)(1)(B)(iii).

Chen argues that the BIA erred in upholding the adverse credibility determination where he had trouble understanding the Government's misleading questions during cross-examination. Chen points to questions by the Government regarding his knowledge of religion, whether he knew where he could buy a bible, and whether he had seen before the people present at Sister Lu's house on April 16, 2006. As noted by the Government, counsel did not object to the nature of the questions at the hearing. In addition, Chen testified that he initially incorrectly answered the question whether he had seen the people at Sister Lu's before because he was nervous, not because he was misled. The IJ also did not rely on Chen's knowledge of Christianity in finding him not credible. To the contrary, the IJ stated that knowledge of the tenets of a religion is not required. Chen has not shown that the BIA erred on this basis.

Chen also argues that the IJ erred in concluding that he lacks spirituality and in stating that he had no fervor or passion in his testimony. Chen argues that he was not asked how his beliefs changed his spirituality and asserts that the IJ's reasoning in this regard is speculative. In concluding that Chen's presentation was not very compelling, the IJ noted that he did not get the impression that Chen had any particular spirituality

regarding his religion and that he did not detect any fervor or passion in Chen's testimony. The IJ further noted that Chen's demeanor did not suggest that he had firm convictions, that he gazed downward while testifying, and that he gave short and non-responsive answers to questions. A high degree of deference is given to a reasonable adverse inference drawn from an alien's demeanor. Dia v. Ashcroft, 353 F.3d 228, 252 n.23 (3d Cir. 2003) (en banc). Even if the IJ may have erred in concluding that Chen lacked any spirituality, the IJ did not err in relying on the manner of Chen's presentation to support the adverse credibility determination.

Finally, Chen argues that the IJ erred in finding his written statement and testimony inconsistent as to whether he knew the names of the people who gathered at Sister Lu's house. Chen contends that his written statement only provides that he was introduced to the people at the house, not that the others introduced themselves by name. Chen also argues that the inconsistency between his statement and testimony as to the number of persons present was minor. As to the latter argument, the IJ acknowledged that this inconsistency was minor and stated he did "not want to make too much of it." IJ's Dec. at 10. We also find no error in the reliance on Chen's testimony that he did not know the names of the other persons at the house to support the adverse credibility finding, where Chen stated that he was introduced to everyone on September 25, 2005,

6

and that he attended weekly meetings with these individuals until April 16, 2006. Chen has not shown that the evidence compels a contrary conclusion.

Accordingly, we will deny the petition for review.